**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leonardo Tapia-Felix, | No. CV-15-01464-PHX-SPL |
| Petitioner, | **ORDER** |
| vs. | |
| William P. Barr, U.S. Attorney General, | |
| Respondent. | |

On October 28, 2016, this proceeding was transferred to this Court for *de novo* review of Petitioner Leonardo Tapia-Felix's (the "Petitioner") citizenship claim. Having carefully reviewed the evidence and the arguments of counsel as presented during the bench trial, the mandate of the Court of Appeals for the Ninth Circuit, and the written submissions provided to the Court since the case's remand (Docs. 114, 119, 122), the Court issues the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

**I.     Findings of Fact**[1]

Petitioner Leonardo Tapia-Felix was born on June 16, 1972. Petitioner's mother, Rosa Maria Felix ("Felix"), was born in San Luis Rio Colorado, Sonora, Mexico on April 5, 1957, and Petitioner's father, Leonardo Tapia-Ambriz ("Tapia-Ambriz"), who is now deceased, was born on April 27, 1938. At the time of Petitioner's birth, Felix was 15 years

---
[1] The vast majority of the evidence in this case is undisputed and has been stipulated to by the parties.

old and Tapia-Ambriz was 34.

On July 24, 1972, Petitioner's birth was registered in Mexico. The registration of birth listed his birthplace as San Luis Colorado, Sonora, Mexico, and was signed by both Felix and Tapia-Ambriz, as well as by Petitioner's maternal grandmother, Marcelina Felix, and his paternal aunt, Lilia Tapia, who signed as witnesses.

Growing up, Petitioner lived in both Mexico and the United States. In September of 1990, Felix and Tapia-Ambriz signed a registration of birth in California, which listed Petitioner's birthplace as Santa Ana, California. Adelina Tapia, who is married to Tapia-Ambriz's brother, Sergio Tapia, also signed the registration as a supporting witness. The delayed registration of birth reflects that the registering officials relied on a baptismal certificate that showed Petitioner had been born on June 16, 1972 in Santa Ana, California, and baptized on December 17, 1972 at Our Lady Queen of Angels Church in Los Angeles, California. (Doc. 77-2 at 28) On November 2, 1990, a Delayed Registration of Birth was issued.

On May 16, 2007, Petitioner obtained a United States passport. In 2008, Petitioner's daughter, Blanca Nayeli Tapia Ochoa ("Ochoa"), obtained a certificate of U.S. citizenship based on her derivative status through Petitioner.

In 2008, Petitioner was charged with an unrelated crime in state court. At that time, an immigration check was performed that revealed he had been encountered by immigration officials on April 28, 1987 and on August 21, 1998. During those encounters, he had been determined to be a citizen of Mexico and was issued an alien registration number. An investigation pursued, and in 2009, immigration authorities obtained a copy of Petitioner's Mexican registration of birth, Mexican birth certificate, and Mexican National Registration Card that was issued on September 10, 2000. On January 13, 2011, U.S. Department of Homeland Security Special Agent Brian Wakefield interviewed Petitioner's mother at her residence, which was conducted in the Spanish language. Wakefield also wrote a sworn statement in the Spanish language on Felix's behalf, as she was illiterate. Felix signed the statement. The statement is purported to memorialize Felix's

interview and attests, among other things, that Petitioner was born in Mexico and was taken to the United States when he was 40 days old.

On February 15, 2012, the U.S. Department of State issued a letter to Petitioner informing him that, having considered Petitioner's Mexican birth certificate and Felix's 2011 statement, his United States passport was revoked. Ochoa's citizenship has not been revoked.

On July 31, 2012, Petitioner was placed in removal proceedings, to which Petitioner asserted a claim of United States citizenship in response. In November 2012, an Affidavit to Amend a Record was submitted by two special agents to the California Office of Vital Records, which was appended to Petitioner's California Delayed Registration of Birth. The affidavit stated "Delayed Reg. of Birth obtained fraudulently. Registrant's original Mexican birth certificate obtained by U.S. Dept. of State." (Exh. 62.)

While his removal proceedings were ongoing, on May 8, 2012, Petitioner, through counsel, petitioned the Superior Court in San Luis Rio Colorado, Sonora, Mexico for an order declaring his Mexican birth certificate to be null and void. The petition was granted and the court entered a judgment of nullification that became final on December 11, 2012. The registration of birth was annotated by the Office of Civil Registry to reflect the court's judgment on December 13, 2012.

After several rounds of hearings and decisions, on May 10, 2013, an immigration judge ordered Petitioner removed to Mexico. Petitioner appealed, and the case was remanded by the Board of Immigration Appeals ("BIA") to allow Petitioner to offer additional evidence in support of his citizenship claim. Following a hearing on remand, on June 24, 2014, the immigration judge again found Petitioner to be removable as charged, and the decision was affirmed by the BIA on December 12, 2014. Petitioner sought review of that decision by the Ninth Circuit Court of Appeals. The Ninth Circuit found a genuine issue of material fact existed as to Petitioner's claim of United States citizenship, and the case was transferred to this Court for a *de novo* review of his citizenship claim.

On December 1, 2016, a bench trial on the merits of this action was held. The Court

heard the testimony of Petitioner, Felix, Agent Wakefield, Avelina Tapia, and Sergio Tapia. On March 10, 2017, the Court issued an Order (the "Trial Order") finding that Petitioner was not a national of the United States of America (Doc. 107). Petitioner appealed the Trial Order (Doc. 109), and the Court of Appeals for the Ninth Circuit vacated the Trial Order and remanded the case (the "Mandate") for further consideration of (i) the stipulation between Respondent William P. Barr (the "Government") and Petitioner regarding Petitioner's baptism and (ii) the expert witness testimony of Gretchen Kuhner. (Doc. 112-2)

## II. Conclusions of Law[2]

### A. Burden of Proof

At issue is a judicial determination of the nationality of Petitioner, in the nature of a declaratory judgment claim brought under 28 U.S.C. § 2201(a). *See* 8 U.S.C. § 1252(b)(5)(B) (if a "petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court… for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28").

There are "two sources of citizenship, and two only: birth and naturalization." *Miller v. Albright*, 523 U.S. 420, 423-34 (1998). Here, Petitioner claims only citizenship by birth. The Government has presented evidence of Petitioner's foreign birth that gives rise to a rebuttable presumption of alienage, shifting the burden to Petitioner to establish a valid claim to citizenship. *See Mondaca-Vega v. Lynch*, 808 F.3d 413, 419 (9th Cir. 2015); *Ayala-Villanueva v. Holder*, 572 F.3d 736, 737 n. 3 (9th Cir. 2009); *Chau v. INS*, 247 F.3d 1026, 1029 n. 5 (9th Cir. 2001). The parties have stipulated that because Petitioner was issued a U.S. passport and his daughter obtained a certificate of U.S. citizenship based on

---

[2] To the extent any the Court's conclusions of law are more properly characterized as findings of fact, they should be treated as such. *See Fed. Trade Comm'n v. Money Now Funding LLC*, No. CV-13-01583-PHX-ROS, 2014 WL 11515626, at *2 (D. Ariz. Dec. 10, 2014).

his purported status as a U.S. citizen, Petitioner has produced "substantial credible evidence" of his U.S. citizenship. *See Mondaca-Vega v. Lynch*, 808 F.3d at 419. Therefore, the parties agree that the ultimate burden rests with the Government to prove that Petitioner is removable by clear, unequivocal, and convincing evidence. *Id.*

"Clear and convincing evidence requires greater proof than preponderance of the evidence. To meet this higher standard, a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable.'" *Sophanthavong v. Palmateer*, 378 F.3d 859, 866 (9th Cir. 2004) (internal citations omitted); *See also Mondaca-Vega,* 808 F.3d at 422 (holding that the Government's burden to establish alienage by "clear, unequivocal, and convincing" evidence signifies the same intermediate standard as "clear and convincing"). "Evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

### B. Prior Conclusions of Law

The Court maintains its conclusions of law addressed in the Trial Order that were undisturbed by the Mandate. The Government has offered evidence which includes Petitioner's Mexican birth certificate, a Mexican Clave Única de Registro de Población card, documents from Petitioner's A-file relating to Petitioner's historical encounters with immigration officials and investigative reports, and the citizenship application packet of Petitioner's daughter, which includes her Mexican birth certificate that lists Petitioner's nationality as Mexican. The authenticity and admissibility of Petitioner's Mexican registration of birth, along with its corresponding translation, is undisputed. The registration of birth, recorded 39 days after Petitioner's birth, provides that he was born on June 16, 1972 at 3:00 a.m. in San Luis Rio Colorado, Mexico. It states that Petitioner was the first born child of Felix, who was a 15-year-old homemaker, and Tapia-Ambriz, who was a 34-year-old day laborer. The registration reflects that Felix and Tapia-Ambriz

resided together in Mexico, but were not married. The registration of birth was witnessed by Felix's mother and Tapia-Ambriz's sister.

The Court finds that the Mexican registration of birth bears sufficient indicia of trustworthiness and is close in time, if not contemporaneous, as to be conclusive evidence of Petitioner's birth in Mexico. *See Coronoa-Paloma v. INS,* 661 F.3d 814 (9th Cir. 1981); *Zerri v. Gonzales*, 471 F.3d 342 (2nd Cir. 2006); *Venercion v. INS*, 791 F.2d 778, 779–80 (9th Cir. 1986); *Mah Toi v. Brownell,* 219 F.2d 642, 644 (9th Cir. 1955) ("Neither law nor reason justifies holding an order to be of greater evidentiary value than a certificate in establishing the place and time of birth when such facts are in issue in a proceeding concerned with United States citizenship."); *Pinto-Vidal v. Attorney General of U.S.*, 680 F. Supp. 861, 862 (S.D. Tex. 1987) (finding a Mexican birth certificate was a contemporaneous record of birth where it indicated that the birth had been registered on April 18, 1967, 39 days after the petitioner was born on March 10, 1967); *Liacakos v. Kennedy*, 195 F. Supp. 630, 631 (D. D.C. 1961) ("a record of birth contemporaneously made by governmental authority in official records would be almost conclusive evidence of birth."). The Mexican registration of birth contains specific information that forms a coherent and reliable account of Petitioner's birth, and the other facts contained within the record of registration are consistent with the evidence presented in this case.

Petitioner has offered a copy of a Mexican judgment nullifying the Mexican registration of birth and birth certificate, which the Court finds is facially valid. The judgment however is not entitled to comity. Nor does it cast doubt on the validity of Petitioner's Mexican registration. Unlike here, no evidence was provided before the Mexican court that contradicted Petitioner's position; the Government did not have notice or an opportunity to be heard in the Mexican proceeding. *See Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV,* 347 F.3d 589, 594 (5th Cir. 2003) (a foreign court's judgment on a matter is conclusive and entitled to comity when the relevant parties had an opportunity to be heard).[3] The Mexican court did not engage in the same

---

[3] Further, giving preclusive effect to the Mexican judgment finding that Petitioner

6

legal determination. (*See* Exh. 7, p. 7 (stating that the determination was whether the evidence tended to support the petitioner's position).) Nor did the Mexican court consider the same body of evidence. For example, the judgment reflects that it was

> supported by the testimony of PATRICIA BECERRA LUNA and ALICIA GARCIA JIMENEZ, who at the hearing of October Five, two thousand and twelve… stated that they know for a fact the LEONARDO TAPIA FELIX WAS BORN IN THE City of Santa Ana, Orange County, California, and that he was registered again in this City due to his parents' ignorance, who believed that by so doing he would obtain dual citizenship.

(Exh. 7, p. 9.) These named individuals did not testify before this Court, nor are they claimed to have been among those present at or near the time of Petitioner's birth. Therefore, they could not have known with certainty that Petitioner was born in the United States. *See United States v. Lopez*, 762 F.3d 852, 863 (9th Cir. 2014) ("Personal knowledge means knowledge produced by the direct involvement of the senses.").

Further, the testimonial evidence offered does not displace or undermine the evidentiary effect of Petitioner's valid Mexican birth record. The Court does not find that the testimony offered by Felix to be credible. *See Mondaca-Vega v. Lynch*, 808 F.3d at 427. Felix testified that she came with Tapia-Ambriz to the United States when she was three months pregnant with Petitioner. At the time of Petitioner's birth, Felix and Tapia-Ambriz were living at an unidentified location in Oxnard, California. On the day of his birth, Tapia-Ambriz took Felix and his sister in law, Avelina Tapia, to Santa Ana, California to run an errand. Felix testified that Tapia-Ambriz then dropped the two women off at a house, which was either owned or inhabited by a woman named Domita Perez.[4]

---

was born in California would be contrary to the United States' exclusive authority over the regulation of immigration. *See Montemurro v. Immigration and Naturalization Service*, 409 F.2d 832, 832 (9th Cir. 1969) ("under comity - as contrasted with full faith and credit - our courts have power to deny even prima facie validity to the judgments of foreign countries for policy reasons").

[4] Petitioner's California Delayed Registration of Birth reflects that a Domita Perez "assisted" with the birth; her "whereabouts [] unknown." (Exh. 1.) The fact that the preparer of the delayed registration of birth notes that this information is unknown in itself "generates some suspicion about the trustworthiness of the information." *In re E.D.R.*, 772 A.2d 1156, 1160 (D.C. 2001).

Felix does not know why she was left at the house. In any event, she testified that she gave birth to Petitioner later that evening. Domita, Avelina, and an unknown woman were present at the time of birth. Felix testified that Tapia-Ambriz returned to the house approximately four days later, at which point he drove Felix and Petitioner to Oxnard.[5] Sometime thereafter, Petitioner's grandparents took him to a hospital. Felix further testified that when Petitioner was 39 days old, she and Tapia-Ambriz took him to Mexico to register his birth because Tapia-Ambriz wanted Petitioner to have dual citizenship. In 1990, at the request of Tapia-Ambriz, Felix traveled to California to register Petitioner's birth.

The Court does not find Felix's testimony regarding the circumstances surrounding Petitioner's birth to be credible. Felix's account was vague and disjointed. For example, the Court is unable to glean from her testimony exactly where she and Tapia-Ambriz lived at the time Petitioner was born. Felix testified that when they came to the United States, they lived for "a while [at] his mom and dad's and then [they] went to some friends' houses. [They went] different places. [They] were not steadily in one place." (Tr. 156:19-21.) The lack of specificity in Felix's description of Petitioner's birth was markedly dissimilar to the vast majority of her testimony. For example, unlike the story of Petitioner's birth, Felix offered detailed, specific facts surrounding her interview with Agent Wakefield; she clearly and confidently testified as to what he had said to her, what she said to him, and what she was thinking or feeling at the time. *See Mondaca-Vega v. Holder*, 718 F.3d 1075, 1085 (9th Cir. 2013) ("trial courts are generally permitted to evaluate credibility of testimony by assessing its level of detail") *adhered to on reh'g en banc sub nom. Mondaca-Vega v. Lynch,* 808 F.3d 413 (9th Cir. 2015); *Sparkman v. Comm'r,* 509 F.3d 1149, 1156 (9th Cir. 2007) ("The Tax Court, describing [a witness'] testimony as 'vague, contrived, and non-credible,' plainly did not believe her, and the Tax Court, like any other court, may disregard uncontradicted testimony by a taxpayer where it finds that testimony lacking in credibility." (some internal quotation marks omitted)).

---

[5] Avelina testified that she was picked up from the house by her husband Sergio Tapia. Sergio testified that he picked up Avelina from the house in Santa Ana the day after Petitioner was born.

8

The unexplained inconsistences in her account also lead the Court to find her story of Petitioner's birth in the United States to be improbable. *See Mondaca-Vega v. Holder*, 718 F.3d at 1085 ("It is well settled that a fact-finder may rely on inconsistencies to support an adverse credibility determination"); *United States v. McCarty*, 648 F.3d 820, 829 (9th Cir. 2011). The Government has presented the contemporaneous birth certificate of America Tapia, Felix's daughter, who was born in a hospital in Oxnard, California the year after Petitioner was born. (Exh. 78.)[6] On one hand, Felix was unable to identify where she lived in Oxnard at the time of Petitioner's birth, and testified that she did not go to the hospital with Petitioner after he was born because Petitioner's grandparents "said [Felix] was very young and Leonardo the father… could get in trouble" due to her age. (Tr. 160: 4-6.)[7] Yet, when questioned with regard to America's birth, Felix responded that at "[t]hat time [she] was at the home of Leonardo Tapia Ambriz's mom and dad and when [she] went into labor, they took [her] to the hospital." (Tr. 162: 12-14.)

Similarly, Felix did not offer a credible explanation regarding Petitioner's registration in Mexico that undermines the Court's confidence that it is evidence of his alienage. Felix testified that Tapia-Ambriz took Petitioner to Mexico to register his birth because he wanted him to obtain dual citizenship. Yet, Petitioner's birth was not also registered in the United States at that time.[8] Felix was unable to offer any explanation as to why dual citizenship in Mexico was pursued for Petitioner, but not for his sister who was born in the United States the following year.

---

[6] The authenticity of the record is undisputed.

[7] The Court also observes that although Felix testified that Petitioner's grandparents took him to the hospital after he was born, no hospital records or other post-natal records have been provided to the Court. The absence of supporting documentary evidence from the time of Petitioner's birth further undermines Felix's account in light of the record that was made of America's birth.

[8] Felix previously testified in immigration court that she did not register Petitioner in the United States at the time of birth because she did not have immigration status. However, she was unable to provide any explanation as to why Tapia-Ambriz, who did have immigration status, did not register Petitioner's birth in the U.S. at the same time he registered Petitioner's birth in Mexico. (IJ Tr. 75:2-21 (Sep. 21, 2012).) Again, this reasoning cannot be reconciled with the hospital birth and contemporaneous registration of America the following year.

The Court's conclusion that Felix's testimony concerning Petitioner's Mexican registration is less than credible is reinforced by her admission that she signed two conflicting registrations of birth – one which stated Petitioner was born in Mexico, and one filed eighteen years later stating that he was born in the United States. Felix was unable to explain why Petitioner's birth was registered in the United States in 1990, and the statements that Felix does offer in connection with the delayed registration of birth only give rise to further suspicion. For example, Felix testified that in 1988 she began her paperwork to become a lawful permanent resident, and moved to Yuma, Arizona. (IJ Tr. 53:6-114 (Sept. 21, 2012).) In a sworn statement submitted in support of Blanca's citizenship application, Felix stated that she had been a resident of the U.S since 1989, and in 1992, Petitioner had been residing with her in Yuma, Arizona. (Exh. 72.) Yet, in the delayed registration of birth issued in 1990, Felix stated that she was living in Mexico.

The Court also heard the testimony of Avelina and Sergio Tapia, who were offered as percipient witnesses. While Avelina's testimony was consistent with Felix's account, it does not detract from the evidence that shows Petitioner was born in Mexico. Avelina's limited testimony was cursory and conclusory. She offered no specific independent facts or personal observations that make Felix's vague and improbable account more plausible. Therefore, her testimony is not credited as evidence of Petitioner's birth in Mexico. Nor is Sergio's testimony entitled to any evidentiary weight. While Sergio testified that he picked Avelina up the day after Petitioner was born, he did not testify that he was present for the birth or encountered Petitioner or Felix at that time. *See United States v. Lopez*, 762 F.3d 852, 863 (9th Cir. 2014) ("Personal knowledge means knowledge produced by the direct involvement of the senses."). Therefore, the testimonial evidence of Petitioner's birth in the United States does not undermine the Court's confidence in the Government's evidence that proves he was not. *See DeBrown v. DOJ*, 18 F.3d 774 (9th Cir. 1994) (finding mother's testimony and affidavits from two witnesses to birth did not rebut Mexican birth certificate); *Pinto-Vidal v. Attorney General of the United States*, 680 F. Supp. 861 (S.D. Tex. 1987) (finding father's testimony that he filed a false Mexican registration of birth

and a baptismal certificate did not rebut Mexican birth certificate).

Lastly, the Court observes that it does not assess the credibility of Agent Wakefield nor weighs the evidentiary value of Felix's 2011 sworn statement. Assuming without deciding that the sworn statement written by Agent Wakefield on Felix's behalf was not an accurate memorialization of their interview, that finding would say little about what *was* said. And an inverse reading of Felix's 2011 statement, which Petitioner maintains should be read to support his claim that he was taken to Mexico from the United States when he was 40 days old, would be entitled to no greater weight than Felix's already discredited testimony. Likewise, if assuming that the sworn statement was an accurate memorialization of Felix's interview and was made of her own volition, it would not bolster the Government's case. The Court has not found Felix to be credible. For the same reasons Felix's testimony does not serve as evidence of Petitioner's birth in California, her 2011 statement cannot be accepted as a reliable account that proves that Petitioner was born in Mexico.

### C. Consideration of Baptismal Certificate

The Court of Appeals for the Ninth Circuit found that the Court erred in the Trial Order for failing to consider the fact of Petitioner's baptism, which was stipulated to by both parties through Petitioner's American baptismal certificate.[9] (Doc. 112-2 at 3) The Ninth Circuit found that this stipulation was binding on the Court and cannot be rejected. *Id*. Petitioner argues that the fact of Petitioner's baptism requires the Court to find that Petitioner's delayed California registration of birth was not based on fraud. (Doc. 114 at 2) However, the Government argues that its stipulation to the fact of Petitioner's baptism does not mean that it stipulated to the accuracy or authenticity of the American baptismal certificate. (Doc. 119 at 4)

The Court accepts the parties' stipulation to the fact of Petitioner's baptism. However, the certificate of baptism remains an unauthenticated copy of a testimonial

---

[9] Specifically, the parties stipulate that Petitioner was "baptized on December 17, 1972, at the Our Lady Queen of Angels Church in Los Angeles California." (Doc. 119 at 4)

record. As discussed in the Trial Order, the certificate of baptism does not contain a seal and is a black and white copy of a form that appears to have been completed by typewriter. Therein, a "Rev. Albert Vazquez CMF" is purported to summarize information appearing "from the Baptismal Register of [the] Church." At the bottom of the document, the "[c]urator of the files," whose name is illegible, certifies by signature that the document is a copy of the original certificate kept in the parish files. Notably, "Rev. Albert Vazquez CMF" did not sign the certificate of baptism. Nor does the certificate contain the signature of "Rev. Eugenio Ortega," who purportedly baptized Petitioner on December 17, 1972.

The document does not indicate who recorded the baptism, or the date on which it was recorded in the baptismal register. The document does not reflect what date the unnamed curator certified the copy. Most troublesome is the fact that the copy of the certificate of baptism that is before this Court is not, and could not be, the baptismal certificate that was provided to the Office of the State Registrar in 1990. In the certificate, "Rev. Albert Vazquez CMF" summarizes information in the registrar as it appeared on August 26, 2002. The California delayed registration of birth however reflects that it relied on a baptismal certificate that was issued on August 6, 1987. So while the baptismal certificate does help to corroborate the Petitioner's account of spending time in both the United States and Mexico, the Court finds that the baptismal certificate does not outweigh the unequivocal and convincing evidence set forth by the Petitioner's Mexican record of birth, a Mexican Clave Única de Registro de Población card, documents from Petitioner's A-file relating to Petitioner's historical encounters with immigration officials and investigative reports, and the citizenship application packet of Petitioner's daughter. Absent the record of baptism, there is no other persuasive evidence of record that shows Petitioner was present in the United States in 1972.

### D. Consideration of Expert Testimony

The Court of Appeals for the Ninth Circuit found that the Court erred in rejecting parts of expert witness Gretchen Kuhner's testimony. (Doc. 112-2 at 4) The Ninth Circuit found Kuhner's testimony regarding a census study commissioned by the Mexican

government was admissible and should not have been disregarded by the Court. *Id.* Kuhner testified about family migration patterns between the United States and Mexico and how nearly half of the families with children born in the United States also register their U.S. citizen child's birth in Mexico. (Doc. 99 at 119–148) Petitioner argues that Kuhner's testimony "represents a probability of barely more than 50% that [Petitioner] was born in Mexico." (Doc. 114 at 7) However, the Government argues Kuhner's testimony is irrelevant to the Petitioner's experience and the facts at issue. (Doc. 119 at 9–10)

The Court accepts and considers Kuhner's testimony about the child birth registration practices of families migrating between the United States and Mexico. However, the Court finds Kuhner's testimony has limited value in this case. The study described by Kuhner focuses on families of children born in the United States who then migrate to Mexico in order to re-register their children, generally with the hope of obtaining dual citizenship.[10] (Doc. 99 at 125) However, Kuhner fails to testify that she ever interviewed the Petitioner or any of the witnesses in this case to see whether their specific migration patterns mirrored those of the study addressed in her testimony. Kuhner's testimony, even when coupled with the baptismal certificate and the delayed California registration of birth, fails to negate the convincing evidence of the Petitioner's Mexican birth certificate, a Mexican Clave Única de Registro de Población card, documents from Petitioner's A-file relating to Petitioner's historical encounters with immigration officials and investigative reports, the citizenship application packet of Petitioner's daughter, and the inconsistent and unreliable testimony of several witnesses.

**III. Conclusion**

The Court finds that the Petitioner's delayed California registration of birth and American baptismal certificate do not sufficiently challenge or outweigh the Government's clear and convincing evidence of Petitioner's birth in Mexico. Petitioner's California

---

[10] Kuhner testified that there are a variety of reasons why parents register U.S. born children in Mexico which make it a common practice, such as for extended travel in Mexico, for fear that they will be in trouble for removing a child to Mexico, or in order for the child to be admitted to school.

delayed registration of birth was issued almost twenty years after his birth. While a delayed registration of birth can be probative of a claim of United States citizenship even in the face of a contemporaneously filed foreign birth certificate, the strength of the record depends on the evidence relied upon by the state officials who issued it. *See Reyes v. Neelly*, 264 F.2d 673, 675 (5th Cir. 1959) (when a certificate is based upon evidence furnished by a plaintiff, the certificate can "have no greater standing or force than that evidence on which the determination was based"); *Nagle v. Dong Ming*, 26 F.2d 438, 439 (9th Cir. 1928) ("Public record of a birth, if contemporaneously made pursuant to law, would be entitled to great weight; but, in the absence of a special statute, a record made, as in the case here, 25 years after the event has no legal status, and is without substantial probative value. The verified statement upon which it was entered may be considered as an affidavit, but the record itself is without efficacy."); *see also Mah Toi v. Brownell*, 219 F.2d 642, 643 (9th Cir. 1955) (rejecting state's delayed birth certificate as conclusive proof of birth); *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 400 (5th Cir. 2006) (citizenship "is determined by federal law; it is *not* dependent on the law of any particular state." (emphasis in original)). Thus, even considering the American baptismal record and the California delayed registration of birth, the record is absent any other persuasive documentary evidence issued in close proximity to the time of Petitioner's birth that might detract from the evidentiary value of Petitioner's Mexican birth certificate.

Petitioner has no contemporaneous United States birth certificate. Absent the record of baptism, there is no evidence of record that shows the Petitioner was present in the United States in 1972. The earliest record of presence in the United States, outside of Petitioner's baptism, is his encounter with immigration officials in April 1987 – 15 years after he was born. Petitioner's encounter in 1987 preceded the issuance of the baptismal certificate, which was obtained several months later in August 1987. Indeed, Petitioner testified that when he was 15 or 16 years old - in 1987 or 1988 - he started having problems crossing the border and asked his father to help him obtain paperwork.[11] (Tr. 103:20 –

---

[11] While Petitioner testified that his father hired an attorney to register his birth in

140:16.)

The documentary evidence in the record is not suggestive of Petitioner's *birth* in the United States. Thus, in viewing the evidence before the Court, there is not any persuasive documentary evidence that successfully challenges Petitioner's valid Mexican birth certificate, a Mexican Clave Única de Registro de Población card, documents from Petitioner's A-file relating to Petitioner's historical encounters with immigration officials and investigative reports, and the citizenship application packet of Petitioner's daughter. The Court also finds that the evidence presented by the Government is clear, unequivocal, and convincing evidence of Petitioner's alienage, and that evidence is sufficient to warrant disregard of the evidence of U.S. citizenship furnished by Petitioner. *Mondaca-Vega,* 808 F.3d at 420; *Lee Hon Lung v. Dallas,* 261 F.3d 719, 724 (9th Cir. 1958).

Having conducted an evidentiary hearing and a *de novo* review of the complete record pursuant to 8 U.S.C. § 1252(b)(5)(B),

**IT IS ORDERED, ADJUDGED, AND DECLARED** that Respondent has shown by clear and convincing evidence that Petitioner is not a national of the United States.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly, terminate this action, and transmit a copy of the Order to the Clerk of Court for the Ninth Circuit Court of Appeals.

Dated this 15th day of May, 2019.

_____
Honorable Steven P. Logan
United States District Judge

---

California, no explanation as to how the American certificate of baptism was obtained.